IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| GUS'S FRANCHISOR, LLC, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 2:20-cv-2372-JPM-cgc |
| ) | |
| ) | |
| v. ) | |
| ) | |
| TERRAPIN RESTAURANT PARTNERS, ) | |
| LLC, and MARK DAWEJKO, ) | |
| ) | |
| Defendants. ) | |

**TEMPORARY RESTRAINING ORDER AND ORDER SETTING VIDEO HEARING FOR PRELIMINARY INJUNCTION**

This trademark infringement, misappropriation of trade secrets, unfair business practices, and breach of contract case is before the Court on Plaintiff Gus's Franchisor, LLC's Motion for Temporary Restraining Order and Preliminary Injunction, filed on May 26, 2020. (ECF No. 8.)  Plaintiff moves the Court pursuant to Federal Rule of Civil Procedure 65 for a Temporary Restraining Order ("TRO") and Preliminary Injunction barring Defendants Terrapin Restaurant Partners, LLC and Mark Dawejko, one of the principals of Terrapin Restaurant Partners, LLC, from continuing to operate as a Gus's World Famous Fried Chicken Franchise located in Greenbelt, Maryland.  (See generally ECF Nos. 8, 8-1.)

Defendants filed their Response to the Motion on May 29, 2020.  (ECF No. 16.) Defendants argue (1) that the Court does not have jurisdiction to issue a TRO because the Franchise Agreement, which contains a forum selection clause naming the Western District of Tennessee, is not valid; (2) that this action should be dismissed or transferred to the District of

Maryland because there is a related action pending before that Court and Plaintiff's trademark, trade dress, trade secrets, unfair competition, and breach of contract claims are therefore more properly brought as Rule 13 compulsory counterclaims in that case; and (3) that because the store at issue has operated for several years without a signed Franchise Agreement, Plaintiff cannot claim the need for emergency relief in the form of a TRO.  (Id.)

The Court held a Telephonic Hearing to discuss Plaintiff's application for a TRO on Friday, May 29, 2020.[1]  (ECF Nos. 9, 17.)  Prior to the Hearing, Plaintiff gave Defendants notice of the Hearing and provide them with a copy of the Motion.  (See ECF No. 11.)  Counsel present for Plaintiff were Adam Wasch and Michael Marshall.  Counsel present for Defendants were Harry Rifkin and Clarence Wilbon.[2]  The Court also heard testimony from Defendant Mark Dawejko.

The Court looks to four factors to determine whether to issue a TRO: (1) "whether the movant has a 'strong' likelihood of success on the merits"; (2) "whether the movant would otherwise suffer irreparable injury"; (3) "whether the issuance of [a TRO] would cause substantial harm to others"; and (4) "whether the public interest would be served by issuance of [a TRO]."  Thomas v. Schroer, 116 F. Supp. 3d 869, 874 (W.D. Tenn. 2015) (quoting Kendall Holdings, Ltd. v. Eden Cryogenics LLC, 630 F. Supp. 2d 853, 860 (S.D. Ohio 2008)) (internal quotation marks omitted).  No one factor is controlling, and the Court must balance all these factors.  Id. (citing In re De Lorean Motor Co., 755 F.3d 1223, 1229 (6th Cir. 1985)).

As to factor two of the analysis, "irreparable injury 'ordinarily follows when a likelihood of confusion or possible risk to reputation appears' from infringement or unfair

---

[1] The Hearing only discussed Plaintiff's application for a TRO and reserved ruling on Plaintiff's Motion for a Preliminary Injunction for a later date.
[2] Defendants' Counsel have not yet filed notices of appearance or motions for admission *pro hac vice*.

competition." Circuit City Stores, Inc. v. CarMax, Inc., 165 F.3d 1047, 1056 (6th Cir. 1999) (quoting Wynn Oil Co. v. Am. Way Serv. Corp., 943 F.2d 595, 608 (6th Cir. 1991)); see also Eat BBQ LLC v. Walters, No. 12–71–GFVT, 2012 WL 5835679, at *5 (E.D. Ky. Nov. 16, 2012) ("Under the trademark infringement framework, once a moving party has demonstrated a likelihood of confusion, irreparable injury is presumed."); Rood v. Louis, NO. 1:07-CV-1255, 2008 WL 11349947, at *2 (W.D. Mich. Jan. 22, 2008) (finding that a TRO was appropriate under Factor 2 because the affidavit of the plaintiff "clearly shows . . . the immediate and irreparable injury that will result from the enjoined acts," that is, "the likelihood of confusion of the Defendant's actions and representations with the actions and representations of Plaintiff").

Based on the submissions of Plaintiff (ECF Nos. 8, 8-1, 8-2, 8-3) and the evidence presented to the Court at the Hearing, the Court finds that Plaintiff has met its burden of demonstrating the necessity of a TRO. The Court will grant Plaintiff's motion.

As a preliminary matter, the Court finds that Plaintiff has made a substantial showing that the Court has jurisdiction to issue a TRO in this case. Defendant based its jurisdictional challenge on the fact that Defendant Mark Dawejko never signed the Franchise Agreement, thereby rendering the Agreement and the Agreement's choice of venue and injunction provisions invalid. The Court heard arguments from both sides on the issue. The evidence is that Dawejko signed a number of documents related to the draft Franchise Agreement, and several included forum selection clauses designating this Court as the proper venue for litigation arising out of the relationship between Plaintiff and Defendants. (ECF No. 1-9 at PageID 461; Exhibit A, Not. of Proprietary and Confidential Info., ECF No. 8-2 at PageID 521–23; ECF No. 1-8 at PageID 454.) For example, the Acknowledgment of Receipt

Agreement contains a choice of forum clause designating this Court as the proper venue for any litigation between the Parties related to the Agreement, as well as a choice of law clause requiring the Parties to submit to Tennessee state law.  (See ECF No. 1-9 at PageID 461.) These signed Agreements support a finding that Defendants agreed to resolve all the disputes between the Parties in the Western District of Tennessee.  The Court's finding, however, is preliminary and does not foreclose Defendants' challenging jurisdiction at the Preliminary Injunction Hearing.

The Court finds that Plaintiff has met its burden of demonstrating a likelihood of success on the merits on its trademark infringement, trade dress, trade secrets, and unfair business practices claims.  Both the Plaintiff's brief and Dawejko's testimony at the Hearing demonstrate that Defendants have continued to use the Gus's World Famous Fried Chicken trademarks, and its trade dress and trade secrets, including Gus's signage, menu items such as branded macaroni and cheese, and fried chicken spices and batter, after the termination of the Franchise Agreement on or about May 8, 2020.  (See Termination Letter, ECF No. 1-4.) Dawejko testified that the Gus's location at issue continues to operate as a Gus's World Famous Fried Chicken Franchise even after the termination letter was issued.  (See Letter from Rifkin to Marshall, ECF No. 1-5.)  Dawejko testified that although Defendants are in the process of rebranding the store (changing its name, changing store signs, changing its batter recipe, etc.), the store continues to operate under the Gus's Fried Chicken Franchise name, continues to use Gus's signage, and is serving fried chicken using Gus's protected batter recipe.  Dawejko's testimony also supports the finding that Plaintiff had significant control over the Franchise, and thus, its associated marks, trade dress, and trade secrets.  For example, Dawejko testified that the restaurant removed limes from beers served at the store because

they did not meet the standard of a Gus's World Famous Fried Chicken franchise. He also testified that Gus's prevented him from purchasing certain advertising, because, as Gus's informed him, authentic southern fried chicken stands like Gus's do not advertise.

Plaintiff's briefing and the Dawejko's testimony also demonstrate that consumers readily recognize the Gus's World Famous Fried Chicken brand and its associated marks. Dawejko testified that he targeted the Washington, D.C. Metro area for the development of a Gus's franchise, and that patrons travelled from the D.C. Metro area to Greenbelt, a distance of approximately 14 miles,[3] to purchase Gus's World Famous Fried Chicken. Dawejko also testified that he was aware of Gus's from his time spent in Memphis, Tennessee, where Gus's was established, and that he hoped to expand the successful Gus's brand to the East Coast, including Philadelphia, Pennsylvania and the Washington, D.C. Metro area.

Because Plaintiff has demonstrated a substantial likelihood of success on the merits of its trade secrets, trademark, trade dress, and unfair competition claims, the Court finds that Plaintiff has also demonstrated that it would suffer irreparable harm if Defendants were not temporarily restrained. See Circuit City, 165 F.3d at 1056 (6th Cir. 1999). That Defendant has also demonstrated a substantial likelihood of success on the merits of its trade secrets, trademark, trade dress, and unfair competition claims also supports a finding that factor three of the TRO analysis, whether the issuance of a TRO would harm third parties or the nonmoving parties, supports Plaintiff's position. See Ohio State Univ. v. Thomas, 738 F. Supp. 2d 743, 756 (S.D. Ohio 2010) ("In a trademark case, if the movant can show a likelihood of success, then the harm to others caused by an injunction will likely consist in

---

[3] The Court may take judicial notice of the approximate distance between Greenbelt, Maryland and Washington, D.C. because this fact "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); see also Neal v. Divya Jyoti Ltd., No. 2:18-cv-958, 2019 WL 3416255, at *1 n.2 (S.D. Ohio July 29, 2019) (taking judicial notice of distance between Akron, Ohio and Dublin, Ohio).

5

part of the non-movant's lost profits from sales of the apparently infringing articles and a loss of the money expended on promotional materials and advertising. Such harm caused to apparent infringers, however, is not entitled to consideration in assessing the harm caused by an injunction." (quoting Worthington Foods, Inc. v. Kellogg Co., 732 F. Supp. 1417, 1461 (S.D. Ohio 199)) (internal quotation marks omitted)).

Finally, the Court finds that Plaintiff has also demonstrated that the public interest would be served by granting the TRO, factor four of the TRO analysis. See Carl's Jr. Rests. LLC v Margaret Karcher LeVecke Enters., LLC, No. 3:18-cv-01357, 2020 WL 836549, at *4 (M.D. Tenn. Feb. 20, 2020) (citing Audi AG v. D'Amato, 469 F.3d 534, 550 (6th Cir. 2006)) (noting that "preventing consumer confusion is in the public's interest"); see also Shoney's N. Am. Corp. v. Goldmine Hosp., LLC, 3:10-CV-00894, 2010 WL 3940602, at *1 (M.D. Tenn. Oct. 6, 2010) (noting that in trademark infringement cases, "granting injunctive relief will serve the public interest by preventing confusion of the public and by enforcing contractual duties"). Based on Plaintiffs' showing and the testimony of Mark Dawejko, the Court finds that a consumer ordering from the Greenbelt, Maryland location at issue would be unable to tell that they were not eating at a Gus's World Famous Fried Chicken franchise authorized by Plaintiff. The consumer would be confused as to the nature of the product that he or she was purchasing, thus supporting a finding that allowing Defendants to continue to operate their fried chicken restaurant in the absence of a TRO would not be in the public interest.

For these reasons, Plaintiff's Motion for a TRO is **GRANTED**. **IT IS THEREFORE ORDERED**, pursuant to Federal Rule of Civil Procedure 65(b), that Defendants Terrapin Restaurants Partners, LLC, Mark Dawejko, and Terrapin's subsidiaries, affiliates, officers, agents, and employees, shall be temporarily restrained:

(i)  from using Gus's trademarks or service marks, including the Gus's World Famous Fried Chicken trademarks and service marks, or any variant thereof which is a colorable imitation of or otherwise likely to be mistaken for or confused with or dilute the distinctiveness of Gus's trademarks and service marks;

(ii) from maintaining any signs, menus, fixtures, furniture, furnishings, or other materials that display or contain the Gus's World Famous Fried Chicken marks and trade name, or any colorable imitation thereof, and from maintaining any aspects of interior and exterior décor of the restaurants operated by Defendants that identify or relate to Gus's trade dress or a Gus's World Famous Fried Chicken restaurant;

(iii) from offering to the public Gus's secret recipes provided to Defendants during the franchise relationship at the restaurant being operated by Defendants;

(iv) from disclosing trade secrets set forth in the Gus's Operating and Procedures Manual and other writings provided to Defendants;

(v) from representing the restaurant operated by Defendants as being in any way associated with Gus's World Famous Fried Chicken or its franchise system; and

(vi) requiring Defendants to file with the Court, within fifteen (15) days of entry of the Court's temporary and preliminary injunction, a signed and notarized report showing Defendants' compliance with the Court's injunction, including color pictures depicting Defendants' de-identification of the restaurant they operate.

The Court also addresses the issue of whether Plaintiff should be required to post a bond in connection with this TRO.  See Fed. R. Civ. P. 65(c) ("The court may issue a . . . [TRO] only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."); but see Appalachian Reg'l Healthcare, Inc. v. Coventry Health and Life Ins. Co., 714 F.3d 424, 431 (6th Cir. 2013) (noting that in the Sixth Circuit, the "district court possesses discretion over *whether* to require the posting of security" in connection with the issuance of a TRO (quoting Moltan Co. v. Eagle-Picher Indus., Inc., 55 F.3d 1171, 1176 (6th Cir. 1978)) (emphasis in original) (internal quotation marks omitted)).  The Court finds that **Plaintiff shall post a $10,000 bond or security upon issuance of this Order**.  Insufficient information by either party was presented for a detailed analysis of the bond required despite the Court's inquiry.  A minimal bond of $10,000 therefore is required at this time.

Plaintiff shall also immediately provide a copy of this Order to Defendants via FedEx overnight delivery and any other reasonable means Plaintiff may have for contacting or communicating with Defendants.

A video hearing on whether this TRO should be converted to a Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65(a) shall be held on **June 9, 2020, at 9:30 a.m.** Defendants shall file any opposition to Plaintiff's Motion for Preliminary Injunction no later than **four (4) days prior to the Video Hearing**.  Plaintiff shall file any Reply in further support of its Motion no later than **two (2) days prior to the Video Hearing**.

**SO ORDERED**, this 1st day of June, 2020.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE