# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| GUS'S FRANCHISOR, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Case No. 2:20-cv-2372-JPM-cgc |
| v. | ) |
| | ) |
| | ) |
| TERRAPIN RESTAURANT PARTNERS, | ) |
| LLC, and MARK DAWEJKO, | ) |
| | ) |
| Defendants. | ) |

## ORDER GRANTING PLAINTIFF GUS'S FRANCHISOR, LLC'S MOTION FOR CONTEMPT

This cause is before the Court on Plaintiff Gus's Franchisor, LLC's (hereinafter "Gus's") Motion for Contempt, filed on June 23, 2020. (ECF No. 29.) Gus's moves the Court pursuant to 18 U.S.C. § 401 to find Defendants Mark Dawejko and Terrapin Restaurant Partners, LLC (hereinafter "Terrapin") in civil contempt of Court for violating the Court's Temporary Restraining Order ("TRO"), entered on June 1, 2020, and the Consent Permanent Injunction, entered on June 15, 2020, when they continued to operate their Greenbelt, Maryland fried chicken restaurant in violation of these orders. (See generally id.) Gus's requests a sanction of $25,000 and an award of attorney's fees and costs. (Id.)

Defendants filed their Response on July 10, 2020. (ECF No. 31.) Defendant Mark Dawejko also filed an Affidavit of Compliance with the Court's Permanent Injunction on June 30, 2020. (ECF No. 30.) Defendants argue that the Motion for Contempt lacks merit. (See

generally ECF No. 31.) Defendants also move the Court pursuant to Rule 11 to sanction Plaintiff for bringing the Motion. (Id. at PageID 1405.) Gus's filed a Reply Brief on July 17, 2020. (ECF No. 34-1.) Gus's reasserts that Defendants have not complied with the TRO and the Permanent Injunction, and that it is entitled to sanctions. (Id.)

The Court held a Video Hearing on the Motion on July 28, 2020. (See Minutes, ECF No. 40.) Present were counsel for Plaintiff and Defendants. The Court heard testimony from Defendant Mark Dawejko. Plaintiff put forth no additional proof and rested on its pre-hearing filings.

For the reasons set forth below, the Motion for Contempt and Sanctions is **GRANTED**. Defendants' request for Rule 11 sanctions is **DENIED**, Plaintiff's Motion for contempt having been granted.

I.  BACKGROUND

Gus's filed its Complaint on May 22, 2020. (See Compl., ECF No. 1.) Gus's alleges that Defendants unlawfully used Gus's trademarks, trade dress, trade secrets and proprietary business information in operating their Greenbelt, Maryland Gus's franchise after Gus's terminated its franchise relationship with Defendants on or about May 8, 2020. (See id. ¶¶ 1– 4.) Plaintiff filed a Motion for a TRO and Preliminary Injunction on May 26, 2020. (ECF No. 8.)

The Court held a hearing on May 29, 2020 on Plaintiff's application for a TRO. (See Minutes, ECF No. 17.) After hearing testimony from Defendant Mark Dawejko the Court granted the TRO. (See TRO, ECF No. 20.) The TRO prevented Defendants from using any of Gus's trademarks, service marks, or any "colorable imitation of" Gus's marks. (Id. at

PageID 660.)  The TRO also prevented Defendants from operating their restaurant as if it was "in any way associated with Gus's World Famous Fried Chicken or its franchise system," among other restrictions.  (Id.)  Defendants were required to provide an affidavit of compliance within 15 days of the entry of the TRO.  (Id.)

On June 15, 2020, the Court entered a Consent Permanent Injunction as submitted by the Parties.  (ECF No. 26.)  Defendants were enjoined from operating as a Gus's franchise and representing the restaurant as a Gus's restaurant, and Defendants were required to remove all Gus's proprietary information from the Greenbelt, Maryland restaurant.  (See generally id.)  Defendants were required to file an affidavit demonstrating compliance with the Permanent Injunction by June 30, 2020.  (Id. at PageID 675–76.)

On June 23, 2020, Gus's filed its Amended Complaint, alleging that Defendants continued to operate their restaurant as a Gus's Fried Chicken franchise despite the TRO and Permanent Injunction.  (See Am. Compl., ECF No. 29 ¶¶ 6–11.)  Gus's also filed a Motion for Contempt, claiming that Defendants have violated the Court's TRO and Permanent Injunction.  (ECF No. 29.)  Defendants filed the Affidavit of Mark Dawejko, who asserts that Defendants have complied with the Permanent Injunction and provides pictures demonstrating their compliance with the Orders.  (See Aff. of Mark Dawejko, ECF No. 30.)  Defendants' responded to the Motion on July 10, 2020. (Defs. Resp., ECF No. 31.)  Plaintiff filed a Reply Brief on July 17, 2020.  (ECF No. 34-1.)  The Court held a Hearing on the Motion on July 28, 2020 at which Mark Dawejko testified.  (Minutes, ECF No. 40.)

## II.     LEGAL STANDARD

Under 18 U.S.C. § 401, "A court of the United States shall have the power to punish by fine . . . at its discretion, such contempt of its authority, and none other, as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree or command." 28 U.S.C. § 401(3).  A court may find a party in civil contempt for violating a permanent injunction.  Redken Labs., Inc. v Levin, 843 F.2d 226, 229–30 (6th Cir. 1988).  The basic purpose of a civil contempt order is to ensure prompt compliance with all judgments and orders of the court.  Id. at 229; see also N.L.R.B. v. Cincinnati Bronze, Inc., 829 F.2d 585, 590–91 (6th Cir. 1987) ("[T]he power of courts to punish for contempts is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law." (quoting Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 450 (1911)) (internal quotation marks omitted)).  The court may find a party in contempt to ensure the party's future compliance with the court's orders or to compensate the moving party for injuries caused by the nonmoving parties' noncompliance. Smith & Nephew, Inc. v. Synthes (U.S.A.), No. 02-2873 MA/A, 2007 WL 9706817, at *6 (W.D. Tenn. Nov. 27, 2007).

"A litigant may be held in contempt if his adversary shows by clear and convincing evidence that 'he violate[d] a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order.'" N.L.R.B. v. Cincinnati Bronze, Inc., 829 F.2d 585, 591 (6th Cir. 1987) (quoting SEC v. First Fin. Grp. of Tex., Inc., 659 F.2d 660, 669 (5th Cir. 1981)).  The order cited to by the moving party must be clear and unambiguous, and any ambiguity in its terms must be construed in a manner most favorable to the nonmoving party.  See Grace v. Ctr. for Auto Safety, 72 F.3d

4

1236, 1241 (6th Cir. 1996).  The "willfulness" of a party's noncompliance with the court order is not necessary for a finding of civil contempt.  TWM Mfg. Co., Inc. v. Dura Corp., 722 F.2d 1261, 1273 (6th Cir. 1983).

The party accused of noncompliance may avoid a finding of contempt if they can demonstrate "a present inability to comply with the court's order."  Rolex Watch U.S.A., Inc. v. Crowley, 74 F.3d 716, 720 (6th Cir. 1996) (quoting Rogers v. Webster, 776 F.2d 607, 612 n.6 (6th Cir. 1985)).  The defendants' inability to comply, however, is "not established by evidence or [] denials which the court finds incredible in context."  Id. (quoting Maggio v. Zeitz, 333 U.S. 56, 76 (1948)) (internal quotation marks and alterations omitted).  The defendant must instead "show 'categorically and in detail' why he or she is unable to comply with the court's order."  Id. (quoting Donovan v. Mazzola, 716 F.2d 1226, 1240 (9th Cir. 1983)).  "The inability to comply may not be self-induced," and the "court considers factors such as whether the defendants had used their own resources, asserted their managerial authority, and demanded the subordinates effectuate the court's order."  Smith & Nephew, 2007 WL 9706817, at *6.  "Good faith is not a defense in civil contempt proceedings."  Id.

If the moving party has met its burden of proving by clear and convincing evidence that the nonmoving party is in contempt of court, the court may sanction the offending party. In determining what sanctions are appropriate, courts are guided by the purposes of contempt: "(1) to coerce the defendant into compliance with the court's order; and (2) to compensate the movant for losses sustained."  Dominic's Rest. Of Dayton, Inc. v. Mantia, No. 3:09-CV-131, 2009 WL 10679457, at *4 (S.D. Ohio May 14, 2009) (citing Gompers v. Buck's Stove & Range, Co., 221 U.S. 418, 448–49 (1911)); see also TWM Mfg., 722 F.2d at 1273 ("[Civil contempt's] primary purposes are to compel obedience to a court order and compensate for

5

injuries caused by noncompliance."). When determining whether to impose sanctions, the court must "use the 'least possible power adequate to the end proposed.'" Mantia, 2009 WL 10679457, at *4 (quoting Spallone v. United States, 493 U.S. 265, 276 (1990)). A court may compensate a moving party for the nonmovant's contempt in the form of a fine payable to the movant. Id. This fine "must of course be based upon evidence of complainant's actual loss," and the complainant's "right, as a civil litigant, to the compensatory fine is dependent upon the outcome of the basic controversy." United States v. United Mine Workers of Am., 330 U.S. 258, 304 (1947). A court may also require the contemptuous party to pay the complainant's attorney's fees and costs for bringing the motion. TWM, Mfg., 722 F.2d at 1273.

### III. ANALYSIS

Plaintiff has shown by clear and convincing evidence that Defendants failed to comply with the Court's TRO and the Permanent Injunction. The declarations of Wendy McCrory and Amber Moffit demonstrate that Defendants continued to use Gus's trademarks, trade dress, trade secrets, and proprietary business secrets, despite the entry of the TRO and the Permanent Injunction. (See Decl. of Amber Moffit, ECF No. 32-1; see also Decl. of Wendy McCrory, ECF No. 32-2.)

Amber Moffit, one of Gus's Franchisor's regional operations managers, visited the store on June 5, 2020. (Decl. of Amber Moffit, ECF No. 32-1 at PageID 1416, ¶¶ 2–3.) According to Moffit, the restaurant at issue "continues to operate as though [it] [is] a Gus's restaurant." (Id. at PageID, 1416 ¶ 5.) Moffit attached photographs taken at the restaurant on June 5, 2020, indicating that the Gus's marks are still in use and the restaurant still continued

to operate as a Gus's World Famous Fried Chicken franchise despite its revoked franchise status and despite the Court's TRO. (See Exh. A, ECF No. 32-1 at PageID 1420–1426.) According to Moffit, these photos indicate that the as of June 5, 2020, the offending restaurant was using the Gus's marks both on the store's exterior and interior. (Id. at PageID 1417, ¶ 6 ("Gus's logo and name are displayed on the door, on the banner outside, on the menus, on the receipts, on merchandise, and on the uniforms of the employees.").) Gus's signage had not been removed or covered as of June 5, 2020. (Id. ¶ 7.) Moffit observed that the restaurant continued to use Gus's trade dress, including the interior décor, tables, chairs, furniture and other items associated with Gus's franchises. (Id. ¶ 9.) Moffit indicates that Gus's handbooks were still in the store, and the store was still serving Gus's food using the Gus's proprietary fried chicken batter. (Id. ¶¶ 8, 10.) Moffit also indicated that a consumer reached out to her asking why Gus's was charging a 15% surcharge and why the restaurant was closed on or about June 5, 2020.[1] (Id. ¶ 16.) This evidence shows that Defendants did not comply with the TRO.

The undated declaration of Wendy McCrory filed July 17, 2020 further supports this conclusion. (See generally ECF No. 33-2.) A June 20, 2020 Yelp review attached to the McCrory declaration[2] supports the conclusion that Defendants' unlawful trademark use continued through at least June 20, 2020. Several other examples similarly demonstrating that Gus's marks and trade dress continued being displayed at the Greenbelt, Maryland store. (Id.

---

[1] This is not inadmissible hearsay evidence. It is not being used for the truth of the matter asserted, but rather provides evidence of consumer confusion.

[2] This is also not inadmissible hearsay, for the same reasons provided for in footnote one.

at PageID 1427–29.)  Plaintiff has demonstrated by clear and convincing evidence that Defendants are in contempt of Court.

Defendants have failed to justify their noncompliance with the Court's Orders.  The testimony of Mark Dawejko supports the conclusion that Defendants did not comply with the Court's TRO and Permanent Injunction.  Defendants have provided no evidence to demonstrate that they were unable to comply with the Court's orders.  See Rolex, 74 F.3d at 720.  Mark Dawejko testified that Defendants' Greenbelt, Maryland restaurant continued to operate with a Gus's sign displayed above the store's entrance, even though this violated the TRO.  Dawejko's assertion that his lawyers advised him that it was in the best interest of the store to continue to operate despite the existence of the TRO does not legally justify Defendants' noncompliance.  Dawejko's assertion that it was in the best interest of the restaurant and its employees to remain open during the COVID-19 shutdowns does not excuse Defendants' noncompliance with the TRO and Permanent Injunction.  "[A]dvice of counsel and good-faith conduct do not relieve from liability for a civil contempt . . . ."  Proudfit Loose Leaf Co. v. Kalamazoo Loose Leaf Binder Co., 230 F. 120, 132 (6th Cir. 1915); see also Singletary Constr. LLC v. Reda Home Builders, Inc., No. 3:17-cv-000374-JPM, 2019 WL 6870351, at *2 (M.D. Tenn. Sept. 16, 2019).

Dawejko's affidavit does not satisfy Defendants' obligation to show compliance with the Permanent Injunction.  During the Hearing, Dawejko testified that several of the photos provided as proof of compliance were taken before the TRO and the Permanent Injunction were entered.  Dawejko also lacked personal knowledge as to many of the photos provided, and he testified that the photos were incorrectly attached to his affidavit of compliance.  (See Aff. of Mark Dawejko, ECF No. 30; see also ECF Nos. 30-1 & 30-2.)  The Court credits the

significant discrepancy between Dawejko's affidavit of compliance and his hearing testimony against Defendants, rendering unreliable much of their proof of compliance.

Because the Court finds that Plaintiff has met its burden demonstrating Defendants' noncompliance with the Court's TRO and Permanent Injunction, and because Defendants have failed to legally justify their noncompliance, the Court turns to the appropriate remedy for Defendants' noncompliance.  "Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes; to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." United Mine Workers of Am., 330 U.S. at 303–04 (citing Gompers v. Buck's Stove & Range, Co., 221 U.S. 418, 448–49 (1911)).  "Where compensation is intended, a fine is imposed, payable to the complainant. Such fine must of course be based upon evidence of complainant's actual loss[.]"  United Mine Workers of Am., 330 U.S. at 304.  Defendants' failure to comply with the TRO and the Consent Permanent Injunction from June 1, 2020 to at earliest June 20, 2020 demonstrates that an award is appropriate to coerce Defendants' compliance with the Court's Order.  Additionally, as demonstrated by the declarations of Amber Moffit and Wendy McCrory, Defendants' noncompliance has continued to cause consumer confusion, which goes to the heart of the protections afforded to owners by federal and state trademark law.

Plaintiff, as stated supra, requests a sanction of $25,000 plus an award of attorney's fees and costs.  The Court has no proof before it to support the amount of $25,000.  Skyros, Inc. v. Mud Pie, LLC, No. 2:16-cv-02255-STA-tmp, 2016 WL 4031366, at *5 (W.D. Tenn. July 26, 2016) (basing the amount of the monetary sanction on the approximate value of merchandise sold in connection with Defendant's infringement of Plaintiff's trademark).  An

9

evidentiary hearing is set for **Monday, September 14, at 9:30 a.m.** to determine the amount to be awarded.

## IV.     CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Contempt is **GRANTED**. An Evidentiary Hearing is set for **Monday, September 14, at 9:30 a.m.**.  Plaintiffs shall file an affidavit as to attorneys' fees and costs within **fourteen (14) days of the date of this Order**.

**SO ORDERED**, this 31st day of August, 2020.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE