# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| GUS'S FRANCHISOR, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Case No. 2:20-cv-2372-JPM-cgc |
| v. | ) |
| | ) |
| | ) |
| TERRAPIN RESTAURANT PARTNERS, | ) |
| LLC, and MARK DAWEJKO, | ) |
| | ) |
| Defendants. | ) |

## ORDER ON DAMAGES FOR CONTEMPT

Before the Court is Plaintiff Gus's Franchisor, LLC's ("Gus's") Memorandum in Support of an Award of Damages for Defendants' Contempt of Court, filed on September 11, 2020. (ECF No. 52.) In conjunction with this Court's Order Granting Plaintiff's Motion for Contempt (ECF No. 49), Gus's seeks an award of "trebled damages either in the form of disgorgement of profits or anticipated royalty fees plus attorney's fees and costs." (Id. at PageID 1664.)

Defendants Terrapin Restaurant Partners, LLC ("Terrapin") and Mark Dawejko filed a Response on September 13, 2020. (ECF No. 54.) Defendants assert that Plaintiff's memorandum improperly seeks a substantially greater amount of sanctions than Plaintiff originally sought and argue that the Court should "decline to award Plaintiff any amount based on alleged damages under the Lanham Act." (Id. at PageID 1700.) Defendants also argue that the attorneys' fees and costs must be limited to costs incurred by Plaintiff in bringing the Motion

for Contempt and that "[a]ttorneys' fees and costs related to the TRO, the Consent Permanent Injunction, or unnecessary trips to Maryland in furtherance of Plaintiff's strategy to set Defendants up to be sanctioned for civil contempt are inappropriate." (Id.)

The Court held a Video Evidentiary Conference on September 14, 2020. (See Minutes, ECF No. 56.) The Court heard testimony from Wendy McCrory, President of Gus's. (Id.)

For the reasons set forth below, the Court **AWARDS** Plaintiff damages in the amount of $33,148.93, attorneys' fees in the amount of $22,932.00 and costs in the amount of $938.73.

## I. BACKGROUND

Gus's filed its Complaint on May 22, 2020. (See Compl., ECF No. 1.) Gus's alleges that Defendants unlawfully used Gus's trademarks, trade dress, trade secrets and proprietary business information in operating their Greenbelt, Maryland Gus's franchise after Gus's terminated its franchise relationship with Defendants on or about May 8, 2020. (See id. ¶¶ 1–4.) Plaintiff filed a Motion for a TRO and Preliminary Injunction on May 26, 2020. (ECF No. 8.)

The Court held a hearing on May 29, 2020 on Plaintiff's application for a TRO. (See Minutes, ECF No. 17.) After hearing testimony from Defendant Mark Dawejko the Court granted the TRO. (See TRO, ECF No. 20.) The TRO prevented Defendants from using any of Gus's trademarks, service marks, or any "colorable imitation of" Gus's marks. (Id. at PageID 660.) The TRO also prevented Defendants from operating their restaurant as if it was "in any way associated with Gus's World Famous Fried Chicken or its franchise system," among other restrictions. (Id.) Defendants were required to provide an affidavit of compliance within 15 days of the entry of the TRO. (Id.)

On June 15, 2020, the Court entered a Consent Permanent Injunction as submitted by the Parties.  (ECF No. 26.)  Defendants were enjoined from operating as a Gus's franchise and representing the restaurant as a Gus's restaurant, and Defendants were required to remove all Gus's proprietary information from the Greenbelt, Maryland restaurant.  (See generally id.)  Defendants were required to file an affidavit demonstrating compliance with the Permanent Injunction by June 30, 2020.  (Id. at PageID 675–76.)

On June 23, 2020, Gus's filed its Amended Complaint, alleging that Defendants continued to operate their restaurant as a Gus's Fried Chicken franchise despite the TRO and Permanent Injunction.  (See Am. Compl., ECF No. 29 ¶¶ 6–11.)  Gus's also filed a Motion for Contempt, claiming that Defendants have violated the Court's TRO and Permanent Injunction. (ECF No. 29.)  Defendants filed the Affidavit of Mark Dawejko ("Dawejko Aff."), who asserted that Defendants complied with the Permanent Injunction and provided pictures demonstrating compliance with the Orders.  (See Dawejko Aff., ECF No. 30.)  Defendants' responded to the Motion on July 10, 2020.  (Defs. Resp., ECF No. 31.)  Plaintiff filed a Reply Brief on July 17, 2020.  (ECF No. 34-1.)  The Court held a Hearing on the Motion on July 28, 2020 at which Mark Dawejko testified.  (Minutes, ECF No. 40.)

On August 31, 2020, the Court entered an Order Granting Plaintiff's Motion for Contempt ("Contempt Order").  (ECF No. 49.)  The Contempt Order found that Plaintiff "met its burden demonstrating Defendants' noncompliance with the Court's TRO and Permanent Injunction," but that Plaintiff had not presented sufficient proof for the Court to determine the appropriate amount of damages.  (Id. at PageID 1653.)  The Court found that "Defendants' failure to comply with the TRO and the Consent Permanent Injunction from June 1, 2020 to at the earliest June 20, 2020 demonstrates that an award is appropriate to coerce Defendants'

compliance with the Court's Order." (Id.) The Court noted that Plaintiff's had not provided any proof in support of the requested $25,000 sanction, set an evidentiary hearing for September 14, 2020 and required Plaintiff to file an affidavit as to attorneys' fees and costs. (Id. at PageID 1653–54.)

On September 11, 2020, Plaintiff filed its Memorandum in Support of an Award of Damages for Defendants' Contempt of Court and Supporting Affidavits to Determine Amount to be Awarded. (ECF No. 52.) Plaintiff argues that the Court's determination regarding damages should be guided by the Lanham Act and that it is entitled to a disgorgement of profits for the time period Defendants were in contempt. (Id. at PageID 1657–60.) Specifically, Plaintiff seeks $121,766.63, a figure that encompasses Defendants' gross monthly sales for June 2020 and the expected monthly sales for July and August 2020 based on the the average of Defendants' gross sales for the months of March, April, May and June 2020. (Id.) Plaintiff argues that Defendants have yet to submit adequate proof of compliance with the TRO and the Consent Permanent Injunction and therefore have not been in compliance for the months of June, July and August 2020. (Id.) For its calculation, Plaintiff relies on the Declaration of Wendy McCrory ("McCrory Decl."), in which McCrory states (1) Defendants' average monthly gross sales from March through June 2020 were $44,308.85, (2) Gus's lost access to Defendants' sales reports as of July 2020, and (3) the March through June 2020 average monthly sales adequately establish Defendants' expected sales in July and August 2020. (Id.; see also McCrory Decl., ECF No. 52-1.)

Plaintiff also seeks $6,071.40 in royalty fees for the months of June, July and August 2020 but asks for the greater of the royalty fees or the disgorgement of profits if the Court finds that awarding the greater would consume and include the lesser. (Id. at PageID 1660–61.)

4

Whatever award the Court grants, Plaintiff argues it should be trebled, because Defendants have both willfully operated as a Gus's franchise even after termination from the Gus's franchise system and because Defendants have continued to disregard the Court's Orders. (Id. at 1661–62.) Finally, Plaintiff seeks both attorneys' fees and costs accrued in the investigation of Defendants' contempt, the filing of the Motion for Contempt, and related legal preparations. (Id. at PageID 1662–65.) Based on the McCrory Decl. and the attached affidavits of Plaintiff's counsel, Plaintiff seeks $2,061.69 in costs and either $22,932.00 in combined attorneys' fees or $66,644.50 if the Court "is inclined to also award the fees incurred as to obtain the TRO and Injunction which were ignored by Defendants and resulted in the Order Granting Contempt." (Id. at PageID 1663.)

Defendants filed a Response in Opposition to Plaintiff's Memorandum on September 13, 2020. (ECF No. 54.) Defendants argue that basing the amount of sanctions on a calculation of damages available under the Lanham Act is inappropriate, both because sanctions and Lanham Act damages serve different purposes and because the Court has not made a finding that Defendants' violated the Lanham Act. (Id. at PageID 1701–04.) Defendants further argue that even using a Lanham Act analysis, Plaintiff has failed both to establish that Gus's suffered any damage in the market place resulting from Defendants' noncompliance with the Court's Orders and to provide evidence of Defendants' sales for the three months on which Plaintiff bases its calculation. (Id.) at PageID 1704–06.) Defendants further argue that awarding treble damages would exceed the power necessary to coerce their compliance. (Id. at PageID 1706.)

The Evidentiary Hearing was held on September 14, 2020. (ECF No. 56.) The Court heard arguments from both Parties and Defendants called McCrory as a witness. (Id.) McCrory testified that the Gus's franchise did not suffer any closures, limitation in marketing or decrease

in pricing due to Defendants' noncompliance with this Court's Orders, but that there was customer confusion and loss of goodwill.

## II.    LEGAL STANDARD

Under 18 U.S.C. § 401, "A court of the United States shall have the power to punish by fine . . . at its discretion, such contempt of its authority, and none other, as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree or command." 18 U.S.C. § 401(3). A court may find a party in civil contempt for violating a permanent injunction. Redken Labs., Inc. v Levin, 843 F.2d 226, 229–30 (6th Cir. 1988). The basic purpose of a civil contempt order is to ensure prompt compliance with all judgments and orders of the court. Id. at 229; see also N.L.R.B. v. Cincinnati Bronze, Inc., 829 F.2d 585, 590–91 (6th Cir. 1987) ("[T]he power of courts to punish for contempts is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law." (quoting Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 450 (1911)) (internal quotation marks omitted)). The court may find a party in contempt to ensure the party's future compliance with the court's orders or to compensate the moving party for injuries caused by the nonmoving parties' noncompliance. Smith & Nephew, Inc. v. Synthes (U.S.A.), No. 02-2873 MA/A, 2007 WL 9706817, at *6 (W.D. Tenn. Nov. 27, 2007).

If the court finds a party in contempt, the court may sanction the offending party. In determining what sanctions are appropriate, courts are guided by the purposes of contempt: "(1) to coerce the defendant into compliance with the court's order; and (2) to compensate the movant for losses sustained." Dominic's Rest. Of Dayton, Inc. v. Mantia, No. 3:09-CV-131, 2009 WL 10679457, at *4 (S.D. Ohio May 14, 2009) (citing Gompers v. Buck's Stove & Range, Co., 221 U.S. 418, 448–49 (1911)); see also TWM Mfg., 722 F.2d at 1273 ("[Civil contempt's]

primary purposes are to compel obedience to a court order and compensate for injuries caused by noncompliance."). When determining whether to impose sanctions, the court must "use the 'least possible power adequate to the end proposed.'" Mantia, 2009 WL 10679457, at *4 (quoting Spallone v. United States, 493 U.S. 265, 276 (1990)). A court may compensate a moving party for the nonmovant's contempt in the form of a fine payable to the movant. Id. This fine "must of course be based upon evidence of complainant's actual loss," and the complainant's "right, as a civil litigant, to the compensatory fine is dependent upon the outcome of the basic controversy." United States v. United Mine Workers of Am., 330 U.S. 258, 304 (1947). A court may also require the contemptuous party to pay the complainant's attorney's fees and costs for bringing the motion. TWM, Mfg., 722 F.2d at 1273.

### III. ANALYSIS

Plaintiff bases its request for sanctions on five theories: (1) disgorgement of profits; (2) royalty fees; (3) treble damages; (4) attorneys' fees; and (5) costs. (See generally ECF No. 52.) This Court will consider each argument in turn.

*A. Disgorgement of Profits*

Plaintiff argues that the Lanham Act can be used to guide the Court's structuring of the civil contempt sanction in this case and that, under the Lanham Act structure, Gus's is entitled to Defendants' profits, Gus's damages and the costs of the action. (ECF No. 52 at PageID 1657–58 (citing Sprint Sols, Inc. v. LaFayette, 2:15-CV-2595-SHM-CGC, 2018 WL 3097027, at *15 (W.D. Tenn. June 22, 2018); 15 U.S.C. § 1117(a).).) Plaintiff argues that disgorgement of profits is the appropriate remedy in this trademark action. (Id. at PageID 1658–60.) Plaintiff is correct. "Disgorgement of profits is a traditional remedy in a trademark infringement case." Cernelle v. Graminex, LLC, 437 F. Supp. 3d 574, 606 (E.D. Mich. 2020) (citing Balance

7

Dynamics Corp. v. Schmitt Indus., Inc., 204 F.3d 683, 695 (6th Cir. 2000)); see also Jerry's Famous Deli, Inc. v. Papanicolaou, 383 F.3d 998, 1004 (9th Cir. 2004) ("[D]isgorgement of profits is a traditional trademark remedy and the district court's use of profits as a measure for the contempt sanction is hardly a novel proposition." (citation omitted)).  Disgorgement of profits "perforce is available when the infringing conduct violates an injunction." Id. (citing Leman v. Krentler-Arnold Hinge Last Co., 284 U.S. 448, 457 (1932)).

      Defendants first argue that damages under the Lanham Act are inappropriate in this case because Lanham Act damages must be compensatory and not punitive and a judicial sanction intended to coerce compliance in this case would be punitive.  (ECF No. 54 at PageID 1701–02.)  Defendants are correct that "[w]hen imposed in a trademark action in the first instance, [disgorgement of profits] is intended to compensate, not to punish[.]" Cernelle, 437 F. Supp. 3d at 606 (citing Static Control Components, Inc. v. Lexmark Int'l, Inc., 487 F. Supp. 2d 861, 891 (E.D. Ky. 2007)).  But "[i]n the context of a contempt proceeding, [] the disgorgement remedy takes on a slightly different hue… disgorgement is an equitable remedy, which, in the contempt context, is intended to coerce future compliance with the Court's orders and neutralize the benefit of a contemnor's unjust enrichment." Id. at 607.  A civil contempt sanction cannot be punitive, just as Lanham Act damages cannot be punitive. See Hopper v. Phil Plummer, 887 F.3d 744, 752 (6th Cir. 2018) ("While a criminal contempt sanction is punitive and seeks 'to vindicate the authority of the court,' a civil contempt sanction is remedial and designed to coerce a future act for the benefit of the complainant." (citing Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 827 – 28 (1994))).

      The fact that sanctions for civil contempt are intended to be coercive as well as compensatory does not prevent the Court from using the Lanham Act as a framework for

8

calculating the amount of the award.  See id. at 606–07; see also N. Atl. Operating Co., Inc. v. eBay Seller Dealz_for_You, Case No. 17-10964, 2018 WL 3031092, at *7 (E.D. Mich. June 19, 2018); Howard Johnson Co., Inc. v. Khimani, 892 F.2d 1512, 1519 (11th Cir. 1990) (upholding a district court's use of the Lanham Act as a framework to determine compensatory civil contempt and, in doing so, stating "[r]eference to the Lanham Act was reasonable given the confluence of the trademark infringement subject matter of the statute and this case. … [B]oth the Lanham Act and the civil contempt sanction share a common underlying compensatory goal." (citations omitted)); ePlus Inc. v. Lawson Software, Inc., 946 F. Supp. 2d 449, 456–57 (E.D. Va. 2013) ("Courts cite Leman to support disgorgement remedies in civil contempt proceedings involving issues of trademark, copyright, patent, and other law.").

Defendants next argue that using the Lanham Act as a framework to calculate damages requires the Court to first make a final determination that Defendants violated the Lanham Act. (ECF No. 54 at PageID 1702–04.)  But the Court is not awarding Plaintiff damages for any violation of the Lanham Act.  Rather, the Court is awarding Plaintiff an amount of sanctions that has been calculated using the Lanham Act as guidance for determining the appropriate award.  See ePlus, 946 F. Supp. 2d at 456–57 ("The civil contempt cases awarding disgorgement of profits as a remedy do not do so because of the remedies in any underlying statutory act, though some of the cases do use the underlying act as further support for their holdings. The Leman holding was not based on the fact that the defendant previously had been found guilty of patent infringement.").  The Court is not making any determination as to liability in the underlying cause of action.  Having already determined that Defendants failed to comply with the Court's TRO and the Consent Permanent Injunction (see ECF No. 49), the Court is now using its broad discretion to award disgorgement of profits as a civil contempt sanction.  See

Tom James Co. v. Morgan, 141 F. App'x 894, 899 (11th Cir. 2005) ("To the extent that the district court did not think that the disgorgement of [the defendant's] profits was within its power to award as a civil contempt sanction, the district court erred.").

The Court therefore finds that disgorgement of profits is an appropriate remedy both to compensate Plaintiff for Defendants' violation of and to coerce Defendants to comply with this Court's Orders and will now address the Parties' arguments regarding the calculation of Defendants' profits in this case. Plaintiff argues for a sanction of $121,766.63, based on Defendants' actual gross sales in June 2020 and expected gross sales in July and August 2020. (ECF No. 52 at PageID 1659–60.) Plaintiff bases the three-month timeframe on the Court's holding in its Contempt Order that "Dawejko's affidavit [did] not satisfy Defendants' obligation to show compliance with the Permanent Injunction." (ECF No. 49 at PageID 1652; ECF No. 52 at PageID 1659.)

Defendants argue that (1) Plaintiff has no basis for seeking three months' worth of Defendants' profits because Defendants were in compliance with the Court's Orders by June 20, 2020 and (2) Plaintiff has failed to provide "any evidence that Gus's lost sales or profits, or that Defendant gained them as a result of Defendants' failure to comply with the Court's orders [or] to prove Defendants' sales for the requested three month period for which it seeks to disgorge." (ECF No. 54 at PageID 1705.) Regarding the time period, the Court maintains its prior holding that the Dawejko Aff. did not fully satisfy Defendants' obligation to show compliance with the Consent Permanent Injunction. (See ECF No. 49 at PageID 1652–53.) Plaintiff's request for sanctions in the amount of gross sales for June, July and August 2020 therefore is not inherently unreasonable, but Plaintiff must present adequate proof of the amount of Defendants' sales for those three months.

Using the Lanham Act to guide the Court's analysis, Plaintiff is "required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a); see also Ducks Unlimited, Inc. v. Boondux, LLC, No. 2:14-cv-02884-SHM-tmp, 2017 WL 3579215, at *37 (W.D. Tenn. Aug. 18, 2017). "It is not the plaintiff's burden to prove the profits with exactness because the statute places the burden on the defendant once the plaintiff comes forward with proof of the defendant's gross sales." Wynn Oil Co. v. Am. Way Serv. Corp., 943 F.2d 595, 605 (6th Cir. 1991).

Plaintiff has met its burden to prove Defendants' gross sales for the month of June 2020. (See McCrory Decl., ECF No. 52-2 at PageID 1665 & 1674.) But Plaintiff's calculation of expected damages for the months of July and August 2020 is too speculative. Plaintiff, relying on the McCrory Decl., argues that the average monthly gross sales for March through June 2020 "adequately establish the expected sales in July 2020 and August 2020 due to the impact of COVID-19." (ECF No. 52 at PageID 1659–60.) But the impact of COVID-19 on businesses' sales has not been stagnant; different parts of the country have experienced increased and decreased restrictions at different times over the course of the past year. The Court cannot presume that the average of Defendants' monthly gross sales from March through June 2020 is an accurate prediction of Defendants' sales in July and August 2020, particularly considering that Defendants' sales steadily decreased from March through June 2020. (McCrory Decl., ECF No. 52-1 at PageID 1665.)

In summary, the Court finds that disgorgement of profits as a measure for the contempt sanction is the appropriate standard and that Plaintiff has provided sufficient evidence to prove Defendants' gross sales for the month of June 2020, during which time Defendants were not in compliance with either the TRO or the Consent Permanent Injunction. Because Defendants did

not provide any evidence regarding its costs or deductions from those gross sales, the Court finds that the profits Defendants must disgorge are $33,148.93.

B. *Royalty Fees*

Plaintiff also seeks $6,071.40 in royalty fees based on the fee Defendants agreed to pay when entering the franchise relationship, again for the months of June, July and August 2020. (ECF No. 52 at PageID 1660–61.)  Plaintiff states that "[t]o the extent the Court is inclined to award a disgorgement of profits, which the Court feels would consume and include the award of royalty fees, then only a disgorgement of profits should be awarded." (Id. at PageID 1661.) The Court is so inclined.  Because the royalty fee damages calculation is speculative for the months of July and August 2020 and because the Court is awarding disgorgement of profits in an amount significantly higher than the royalty fees Plaintiff seeks, the Court will not award royalty fees in the amount requested by Plaintiff.

C. *Treble Damages*

Regardless of whether the Court awards disgorgement of profits, royalty fees, or both, Plaintiff seeks treble damages, arguing that the Lanham Act framework gives the Court discretion to award treble damages and that such damages are warranted here because Defendants' contempt was willful and Defendants "have continued to show blatant disregard for this Court's Orders and authority." (ECF No. 52 at PageID 1661–62.)

"[I]n selecting contempt sanctions, a court is obliged to use the 'least possible power adequate to the end proposed.'" Spallone v. United States, 493 U.S. 265, 276 (1990) (citation omitted).  Based on the requirement to use the least possible power, the Court's discretion both in fashioning civil contempt sanctions and awarding treble damages under the Lanham Act framework, and the need to ensure the sanction is compensatory and coercive but not punitive,

12

the Court declines to award treble damages in this case. See, e.g., N. Atl. Operating Co., 2018 WL 3031092, at *7 ("[B]ecause the Lanham Act is used as a framework, particularly in prejudgment cases such as this one, the Court is not bound by the statutory language and declines to award treble damages.")

    *D. Attorneys' Fees*

Plaintiff seeks and the Court will grant its request for attorneys' fees. (ECF No. 52 at PageID 1662–63.) "[T]he award of attorney's fees and expenses to a successful movant may be appropriate in a civil contempt proceeding." TWM Mfg. Co., 722 F.2d at 1273 (citation omitted). "The Court can… award… attorney's fees for a defendant's violation of a permanent injunction." Cricket Commc'ns, Inc. v. Mojo Mobile, LLC, No. 13-0214, 2014 WL 37231, at *2 (M.D. Tenn. Jan. 6, 2014) (citing Gnesys, Inc. v. Greene, 437 F.3d 482, 482 (6th Cir. 2005)).

Defendants argue, and the Court agrees, that the Plaintiff is only entitled to the reasonable fees it incurred relating to its Motion for Contempt. (See ECF No. 52 at PageID 1663; ECF No. 54 at PageID 1707.) Therefore, based on the affidavits of Plaintiff's counsel (see ECF No. 52-4 ¶ 10 & 52-5 ¶ 10), the Court awards Plaintiff $18,620.00 in attorney's fees for Wasch Raines LLP and $4,312.00 in attorney's fees for Evans Petree, PC.

    *E. Costs*

Finally, Plaintiff seeks "$2,061.69 in costs associated with multiple trips to the infringing Greenbelt, Maryland restaurant from Memphis, Tennessee, to investigate and uncover Defendants' contempt." (ECF No. 52 at PageID 1663–64.) Defendants argue that the requested costs were incurred "in furtherance of Plaintiff's plan to set Defendants up to be sanctioned for contempt," that the June 5, 2020 trip was "during the period of time Defendants' believed the parties were in the midst of good faith negotiations," and that the July 2020 trip

13

after the Motion for Contempt was already filed was "nothing more than a paid vacation." (ECF No. 54 at PageID 1708–09.)

The Court will award Plaintiff the costs of the June 2020 trip only. Defendants were required to comply with the TRO even if they were simultaneously negotiating the Consent Permanent Injunction and it was not unreasonable for Plaintiff to attempt to verify Defendants' compliance. But the Court finds it appropriate to strike a balance between those considerations and Defendants' arguments that the July 2020 trip was excessive, particularly because (1) Plaintiff could have hired a local investigator to go to the restaurant, (2) the second trip took place after the Motion for Contempt had already been filed, and (3) the second trip was a multiple day trip. Therefore, the Court awards Plaintiff $938.73 in costs. (See McCrory Decl., ECF No. 52-1 at PageID 1667, 1675.)

### IV. CONCLUSION

For the reasons set forth above, the Court hereby the Court **AWARDS** Plaintiff damages in the amount of $33,148.93, attorneys' fees in the amount of $22,932.00 and costs in the amount of $938.73, for a total award of $57,319.66.

**SO ORDERED**, this 10th day of March, 2021.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE